**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arbella Rodriguez Marquez,<br>Petitioner,<br>v.<br>Eric Rokosky, Warden at Eloy Detention Center, et al.,<br>Respondents. | No. CV 26-01311 PHX JCH (CDB)<br><br>**AMENDED**<br>**REPORT AND RECOMMENDATION**<br>A 232-506-464 |

**TO THE HONORABLE JOHN C. HINDERAKER:**

Petitioner Arbella Rodriguez Marquez, who is represented by counsel, seeks release from detention pursuant to 28 U.S.C. § 2241. Petitioner is currently detained at the Eloy Detention Center in Eloy, Arizona.

## I. Background

Petitioner is a native and citizen of Mexico. (ECF No. 1 at 1). In 2023 Petitioner became a lawful permanent resident of the United States through her citizen spouse. (*Id.*). On or about February 10, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE"), and charged with smuggling a noncitizen into the United States. (ECF No. 1 at 2). The Record of Deportable/Inadmissible Alien provided by Respondents indicates that on February 10, 2025, Petitioner was contacted by the Department of Homeland Security's Customs and Border Protection unit ("CBP") at the Nogales port of entry, while applying for admission "as the driver of a privately owned vehicle." (ECF No. 6-1 at 3). The record of that encounter reports Petitioner's status as that of a noncitizen "travel/seeking" admission to the United States, additionally noting her status as a lawful

permanent resident ("LPR"). (ECF No. 6-1 at 2-3). Petitioner's spouse was in the subject vehicle, in addition to "an adult male passenger" with a "State of Arizona Identification card bearing the name of [] Rodriguez Lopez … who claimed to be the owner of the document he presented." (ECF No. 6-1 at 3). Because the individual "did not resemble the person depicted on the State of Arizona identification," the CBP officer "suspect[ed] [the individual] of being an imposter to the documents presented and [Petitioner] of smuggling him." (*Id.*). The vehicle and its occupants were referred for a secondary inspection, where the "imposter" was found to be someone other than the person identified on the State of Arizona identification card. (ECF No. 6-1 at 4). Upon this determination Petitioner, her husband, and the other man were "secured for detention, officer safety, and further processing." (*Id.*). The other man later identified himself as a citizen and national of Mexico without a valid entry document, and all three individuals were "secured" and escorted to another unit for "further processing." (*Id.*). All three were searched and no weapons or contraband were found. (*Id.*). During a subsequent interview, Petitioner

> … stated she received a Facebook Message, in which a subject by the name of [redacted] who she met through Facebook, sells vehicles in Nogales, Sonora, Mexico asked her to take [redacted] to Tucson, Arizona. RODRIGUEZ Marquez added, she had done this on two other occasions in which [redacted] asked her to take an unknown person to Tucson, Arizona and drop them off at the Quik Trip Gas Station located on Ajo Way in Tucson, Arizona. A lady identified as [redacted]'s aunt picks them up and pays RODRIGUEZ Marquez $500 US dollars. RODRIGUEZ Marquez maintains she was not aware [redacted] did not have a valid entry document to enter the United States. RODRIGUEZ Marquez finished by stating she is aware it is a violation of United States law to smuggle a person into the United States of America.

(ECF No. 6-1 at 4).[1]

At the border Petitioner was determined to be inadmissible pursuant to § 212(a)(6)(E)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(6)(E)(i), as an "alien who at any time knowingly has encouraged, induced,

[1] The record indicates that prior to this arrest Petitioner did not have any criminal history. (ECF No. 6-1 at 4).

assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." (ECF No. 6-1 at 4-5). Petitioner was issued a Form I-862 Notice to Appear, her Lawful Permanent Resident Card was retained, and she was taken into custody. (*Id.*). Petitioner was placed "into full removal proceedings under 8 U.S.C. § 1229a …." (ECF No. 6 at 3).[2]

Petitioner applied for asylum while in custody. (ECF No. 1 at 5). On September 24, 2025, Petitioner's application for asylum was denied by an Immigration Judge ("IJ") and the IJ ordered Petitioner be removed to Mexico. (ECF No. 1 at 2, 5). Petitioner appealed the IJ's denial of asylum and order of removal to the Board of Immigration Appeals ("BIA") on October 23, 2025. (ECF No. 1 at 5). Petitioner's brief was received by the BIA on June 22, 2025, and the Department of Homeland Security's brief was received June 23, 2025. *See* https://acis.eoir.justice.gov/en/caseInformation, last visited July 28, 2026.

Petitioner has been diagnosed with leukemia. (ECF No. 1 at 2). She maintains she has not had access to regular oncology care while detained. Petitioner alleges her "condition has deteriorated significantly since she was detained," i.e., "she has lost over seventy-five pounds, suffers from spontaneous bruising throughout her body, and has recently begun vomiting blood." (*Id.*). Petitioner avers her condition requires monitoring by an oncologist, "which the detention center is not equipped to provide." (*Id.*).

Petitioner contends she "has no qualifying criminal conviction that would trigger mandatory detention under 8 U.S.C. § 1226(c)," noting she was not convicted of alien smuggling or any other offense enumerated in § 1226(c)(1). (ECF No. 1 at 3). Petitioner asserts her detention is pursuant to 8 U.S.C. § 1226(a), because her order of removal is not administratively final, noting the "removal period" stated in § 1231 has not commenced. (*Id.*). Accordingly, Petitioner argues, because 8 U.S.C. § 1226(a) authorizes discretionary civil detention pending removal proceedings, she should be released from custody or provided a bond hearing. (ECF No. 1 at 3, 13).

---

[2] There is no indication in the record before the Court that Petitioner was criminally charged with smuggling a noncitizen into the United States.

Petitioner contends

> … [she] has not been afforded a constitutionally adequate individualized custody hearing at which the government bears the burden of justifying continued detention. To the extent Respondents contend that any prior custody determination satisfies due process, prolonged civil detention of this length—now exceeding twelve months—requires meaningful, individualized reassessment of whether continued detention remains necessary to serve legitimate regulatory purposes.

(ECF No. 1 at 3-4). Petitioner argues that because her "detention is excessive in relation to any legitimate regulatory purpose, it violates the Due Process Clause of the Fifth Amendment …" (ECF No. 1 at 9). Petitioner also asserts her continued detention, the conditions of her confinement, and Respondents' deliberate indifference to her serious medical needs violates her Fifth Amendment rights, citing *Bell v. Wolfish*, 441 U.S. 520 (1979). (ECF No. 1 at 9-12).[3]

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), noting that at the border Petitioner was deemed inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(E), "because she attempted to help someone else enter the United States illegally." (ECF No. 6 at 2). Respondents argue:

> It is true that an alien who has been granted LPR status generally does not need to apply for admission under Section 1225 when reentering the United States. 8 U.S.C. § 1101(a)(13)(C). However, an LPR does need to apply for admission when she "has engaged in illegal activity after having departed the United States[.]" 8 U.S.C. § 1101(a)(13)(C)(iii). The Ninth Circuit has held that attempting to smuggle an alien into the country qualifies as "illegal activity" for purposes of this statute. *Gonzaga-Ortega v. Holder*, 694 F.3d 1069, 1073 (9th Cir. 2012) (citing 8 U.S.C. § 1324(a)(2)). That Petitioner was not charged with a crime is irrelevant. *Id.* at 1074 ("The statute says that an LPR should not be regarded as an applicant for admission unless he has … 'engaged in illegal activity.' It does not say unless he had already been adjudicated as having engaged in illegal activity. How a person who presents himself for admission into the United States is to be treated … is a decision

[3] A conditions of confinement claim is not properly brought in a habeas action, *see*, *e.g.*, *Pinson v. Carvajal*, 69 F.4th 1059, 1072-75 (9th Cir. 2023), although the Court may consider the conditions of confinement when determining if the petitioner's continued detention has become prolonged and unreasonable in violation of their Fifth Amendment rights.

> that has to be made at that time, on the spot, by immigration officers at the border.")

(ECF No. 6 at 4-5).

**II. Analysis**

**A. Petitioner's detention is authorized by 8 U.S.C. § 1225(b)(2)**

Ordinarily a LPR returning to the United States is not treated as an "applicant for admission." However, when a LPR is stopped at the border they are treated as an applicant for admission if the LPR falls within one of the enumerated grounds of § 1101(a)(13)(C)(iii), including being inadmissible under § 1182(a)(6)(E). *See Blanche v. Lau*, 146 S.Ct. 1981, 1988 (2026). And at the time the LPR seeks admission, a *conviction* on a crime alleged to be the basis of inadmissibility is not required.

> Removing a lawful permanent resident on a charge of inadmissibility [] involves two steps: "[W]hile only commission [of the crime] is required at step one" (to show that the alien could be regarded as seeking to be admitted), 'conviction (*or admission*) is required at step two' (to show that the alien seeking to be admitted is inadmissible)." *Barton*, 590 U.S. at 233 [] (internal quotation marks omitted).

*Id.*, 146 S. Ct. at 1988 (emphasis added) (regarding a noncitizen LPR who was charged with a crime of moral turpitude, left the United States, and upon returning to the United States was deemed inadmissible at the border). Pursuant to 8 U.S.C. § 1182(a)(6)(E)(i), any noncitizen, including a LPR, who at any time has knowingly encouraged, induced, assisted, abetted, or aided any other noncitizen to enter or to try to enter the United States in violation of the law is inadmissible. *See Kim v. Gonzales*, 152 F. App'x 29, 20-31 (2d Cir. 2005). When Petitioner was seeking readmission into the United States at the border she admitted to CBP that she was transporting an individual into the United States at the behest of someone who contacted her via a Facebook message, and admitted she was to be paid $500 to transport the person from Nogales to Tucson. Petitioner stated she had previously twice performed this service with different individuals at the request of the same third party, but denied knowing the person she was transporting was not properly documented. Because the basis of inadmissibility was plausibly established at the border,

Petitioner was properly deemed inadmissible. *See Gonzaga-Ortega v. Holder*, 736 F.3d 795, 801-02 (9th Cir. 2013). Therefore, Petitioner's current detention is pursuant to 8 U.S.C. § 1225(b)(2) as a noncitizen deemed inadmissible under 8 U.S.C. § 1182(a)(6)(E), who is not an "arriving" immigrant, who has been in the United States for more than two years, and whose order of removal is not final.[4]

**B. Due process requires that Petitioner receive a bond hearing**

The United States Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The right to be free from physical restraint is "at the heart of the liberty" guaranteed by the Due Process Clause of the Fifth Amendment. *E.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," such detention must still comport with the detainee's right to due process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). *See also Wong Wing v. United States*, 163 U.S. 228, 235-237 (1896).

There is no statutory requirement that a detained noncitizen, LPR or otherwise, be given a hearing regarding the continuation of their detention pending the finality of their removal proceedings. However, the federal courts have generally held that the Due Process Clause does not allow for indefinite detention of a noncitizen during the pendency of their removal proceedings without some type of individualized assessment. *See infra* at 7-10. And the Supreme Court has acknowledged that once a noncitizen gains legal admission into the United States "and begins to develop the ties that go with permanent residence [their] constitutional status changes accordingly." *Landon v. Plascencia*, 459 U.S. 21, 32 (1982), *cited in Demore*, 538 U.S. at 547 (Souter, J., concurring in part and dissenting in part).[5]

---

[4] In contrast, 8 U.S.C. § 1225(b)(1) involves, *inter alia*, inadmissible noncitizens who have committed crimes enumerated in 8 U.S.C. §§ 1182(a)(6)(C) and 1182(a)(7). Additionally, 8 U.S.C. § 1226 employs language associated with warrants, work authorization, and a prior *conviction* for enumerated crimes, i.e., those listed in 8 U.S.C. § 1226(c)(E)(ii)).

[5] The law therefore considers an LPR to be at home in the United States, and even when the Government seeks removal, we have accorded LPRs greater protections

In *Rodriguez v. Marin*, in the context of detention under § 1225(b), the Ninth Circuit Court of Appeals stressed that although the statute did not require a bond hearing, "[a]rbitrary civil detention is not a feature of our American government" and the court expressed "grave doubts that any statute that allows for *arbitrary* prolonged detention *without any process* is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." 909 F.3d 252, 255-56 (9th Cir. 2018) (emphasis added). Although 8 U.S.C. § 1225(b) provides that a noncitizen who is not under a final order of removal "shall" be detained pending the conclusion of their removal proceedings, the federal courts have repeatedly held that even statutorily-authorized detention of a noncitizen in removal proceedings must comport with due process, as interpreted by the federal courts pursuant to their power to award writs of habeas corpus. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applied to detainees who were classified as enemy combatants and stating "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."), *cited in Chekhovskii v. Scott*, No. 2:25-cv-02550, 2026 WL 353265, at *3-4 (W.D. Wash. Feb. 9, 2026).

A majority of the federal district courts that have considered the question have concluded that at some point prolonged detention under § 1225(b), without an individualized bond hearing, violates the detainee's right to due process. *See*, *e.g.*, *Rash v.*

---

> than other aliens under the Due Process Clause. In *Landon v. Plasencia*, 459 U.S. 21 [] (1982), we held that a long-term resident who left the country for a brief period and was placed in exclusion proceedings upon return was entitled to claim greater procedural protections under that Clause than aliens seeking initial entry. The LPR's interest in remaining in the United States is, we said, "without question, a weighty one." *Id.,* at 34 [] *See also Rosenberg v. Fleuti*, 374 U.S. 449 [] (1963) …
>
> Although LPRs remain subject to the federal removal power, that power may not be exercised without due process, and any decision about the requirements of due process for an LPR must account for the difficulty of distinguishing in practical as well as doctrinal terms between the liberty interest of an LPR and that of a citizen.

*Demore v. Kim*, 538 U.S. 510, 547 (2003) (Souter, J., concurring in part and dissenting in part).

*LaRose*, 823 F. Supp. 3d 1164, 1179-80 (S.D. Cal. 2026); *Larrazabal-Gonzalez v. Mason*, 818 F. Supp. 3d 794, 801 (S.D.W. Va. 2026) ("The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant."); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 224 (D.N.H. 2025); *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116-17 (W.D. Wash. 2019) ("prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *Leonteva v. Noem*, ___ F. Supp. 3d ___, No. 26-cv-00043, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026); *Mashchenko v. Rokosky*, No. 25-cv-12387, 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026); *Rodriguez Chavez v. Holman*, No. 25-cv-00267, 2026 WL 136902, at *3 (W.D. Pa. Jan. 20, 2026); *Maksin v. Warden, Golden State Annex*, No. 25-cv-00955, 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-00098, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025).

Absent the availability of § 2241 relief, in circumstances similar to Petitioner's the government could detain a noncitizen for an indeterminate period of time provided there was no final order of removal. This does not conform to the Constitution's guarantee of due process to individuals present in the United States of America. It is recommended that the Court act in concert with the federal District Courts that have concluded that prolonged mandatory detention pending the finality of removal proceedings, without a bond hearing, at some point violates the detainee's right to due process of law. *See Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1220 (W.D. Wash. Feb. 6, 2026); *Tenemasa-Lema v. Hyde*, 810 F. Supp.

3d 244, 256 n.18 (D. Mass. Nov. 25, 2025); *Gao v. LaRose*, 805 F. Supp. 3d 1006, 1100 (S.D. Cal. 2025); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Leke v. Hott*, 521 F. Supp. 3d 597, 603 n.8 (E.D. Va. 2021);[6] *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 851 (E.D. Va. 2020); *Kydyrali*, 499 F. Supp. 3d at 772; *Abdi v. Duke*, 280 F. Supp. 3d 373, 393 (W.D.N.Y. 2017) ("The majority of the courts in this Circuit that have considered the issue agree, and this Court finds their reasoning ... persuasive. Section 1225(b) does not permit the indefinite detention of individuals detained under that statute."); *Mashchenko*, 2026 WL 185204, at *3; *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 25-cv-01658, 2026 WL 145644, at *6 (E.D. Cal. Jan. 20, 2026); *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-03265, 2026 WL 26079, at *3 (S.D. Cal. Jan. 5, 2026) ("The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process."); *Abdul-Samed*, 2025 WL 2099343, at *6; *Arechiga v. Archambeault*, No. 23-cv-0600, 2023 WL 5207589, at *3 (D. Nev. Aug. 11, 2023). *Contra Mamedova v. Noem*, 25-cv-04619, 2026 WL 1162282, at *3 (D. Ariz. Apr. 29, 2026) (collecting cases); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021); *St. Charles v. Barr*, 514

---

[6] In support of this conclusion, in *Leke* at footnote 8 the Eastern District of Virginia cites the following cases:

> *See also Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (34-month detention of arriving alien without bond hearing violates due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772, No. 3:20-cv-539 (S.D. Cal. 2020) (27-month detention of arriving alien without bond hearing violates due process); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (23-month detention of arriving alien without bond hearing violates due process); *Mbalivoto v. Holt*, No.1:20-cv-827 at 5 (Dkt. 22) (E.D. Va. Aug. 11, 2020) (22-month detention of arriving alien without bond hearing violates due process); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention of arriving alien without bond hearing violates due process); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D. N.J. 2019) (same); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (18-month detention of arriving alien without bond hearing violates due process); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1177 (W.D. Wash. 2019) (17-month detention of arriving alien without bond hearing violates due process); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (10-month detention of arriving alien without bond hearing violates due process).

F. Supp. 3d 570, 579 (W.D.N.Y. 2021); *Mendoza-Linares v. Garland*, No. 21-cv-1169, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024).

The Ninth Circuit Court of Appeals has not provided the lower courts with guidance regarding the point at which an immigration detainee's prolonged mandatory detention under § 1225(b) without a bond hearing becomes unconstitutional. The District Courts within the Ninth Circuit's jurisdiction have generally found the test stated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019), applicable with regard to those detained pursuant to § 1225(b), *see*, *e.g.*, *Prabhpreet v. Larose*, 26-cv-393, 2026 WL 310192, at *3 (S.D. Cal. Feb. 5, 2026), although some courts have instead applied the test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), *see*, *e.g.*, *Tigranyan v. Warden of Cal. City Det.*, No. 25-cv-01554, 2026 WL 91765, at *5-7 (E.D. Cal. Jan. 13, 2026), which has often been applied in situations involving detention under § 1226(c). The undersigned believes the *Banda* test is the suitable test.

The *Banda* court considered the following six factors to determine whether continued detention under § 1225(b) without a bond hearing violated the detainee's due process rights:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

385 F. Supp. 3d at 1118, *citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019). *See also Sadeqi*, 809 F. Supp. 3d at 1094; *Kydyrali*, 499 F. Supp. 3d at 773-74; *Prabhpreet*, 2026 WL 310192, at *2-3; *Amado v. United States Dep't of Just.*, No. 25-cv-2687, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025); *Kadir v. LaRose*, 25-cv-1045, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025).

With regard to the total length of detention to date, Petitioner has now been detained for seventeen months. Although the length of Petitioner's detention does not, by itself, establish prolonged detention in violation of due process, neither does that length of

detention insulate Petitioner's case from constitutional review. The federal district courts have ordered a bond hearing where a petitioner was subject to mandatory detention for a shorter length of time. *See*, *e.g.*, *Gao*, 805 F. Supp. 3d at 1112 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) ("Petitioner has been in immigration detention ... approximately one year. District court have found shorter lengths of detention ... without a bond hearing to be unreasonable.") (collecting cases); *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.") (collecting cases); *Tonoyan v. Andrews*, No. 25-cv-00815, 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period ... qualifies as prolonged."). The Court may reasonably conclude that the first *Banda* factor weighs in favor of Petitioner.

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 25-cv-01921, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026), *citing German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020). It could take the BIA six months to a year to reach a decision regarding the IJ's denial of asylum and, should Petitioner exercise her right to appeal any negative decision by the BIA to the Ninth Circuit Court of Appeals, a decision from the appellate court could take up to two years. *See Banda*, 385 F. Supp. 3d at 1119 (finding this factor weighed in the petitioner's favor where a petitioner who had "only recently" appealed the IJ's denial of his case to the BIA faced a process that could "take up to two years or longer"); *Kadir*, 2025 WL 2932654 at *5 ("Petitioner's future detention can last several

more months or even years during the adjudication of Respondents' appeal to the BIA."). Given the current number of cases before the BIA and the Ninth Circuit Court of Appeals, Petitioner might potentially be detained for an additional one or two years pending the final outcome of her removal proceedings. Therefore, the second *Banda* factor also weighs in favor of Petitioner.

With regard to the conditions of confinement, the third prong of the *Banda* test, Petitioner is currently confined at the Eloy Detention Center. Petitioner has leukemia and she alleges she "has not had access to regular oncological care while detained. Petitioner's condition has deteriorated significantly since she was detained; for example, she has lost over seventy-five pounds." (ECF No. 1 at 2, 5-6). "The more that the conditions under" which the noncitizen is being held resemble "penal confinement," the stronger their argument that they are entitled to a bond hearing. *Banda*, 385 F. Supp. 3d at 1119. Inadequate medical care weighs in favor of finding that detention has become unreasonable and a bond hearing is required. *See Tavurov*, 819 F. Supp. 3d at 1222. The Court may reasonably find that this factor weighs in favor of Petitioner.

The fourth *Banda* factor considers any delay in the detainee's removal proceedings caused by the detainee and the fifth *Banda* factor considers any delay in the removal proceedings caused by the Government. There is no evidence that either party has acted to delay Petitioner's removal proceedings and, accordingly, these factors are neutral.

The final *Banda* factor requires consideration of "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* Neither party has provided the IJ's decision denying Petitioner's application for asylum, or any document regarding her appeal of that decision to the BIA. Respondents do not assert that Petitioner's challenge to the order of removal is not made in good faith. Accordingly, at best this factor weighs in favor of Petitioner, and it is otherwise neutral.

On balance, the *Banda* factors weigh in favor of Petitioner and the Court may reasonably find that Petitioner's continued detention without a bond hearing is in violation of her right to due process.

Accordingly,

**IT IS RECOMMENDED that** the Petition at ECF No. 1 be **granted** and the Court order that Petitioner be given a bond hearing within seven (7) days before an Immigration Judge.

**IT IS FURTHER RECOMMENDED that**, should the Court grant the Petition, the Court also order that the the bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and also order that there be a contemporaneous record of the hearing, and further order that at the hearing the Government must bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

**IT IS FINALLY RECOMMENDED that** should the Court grant the Petition, it order the parties to file a joint status report with the Court regarding the bond hearing and whether the Petitioner was released, within three days of the bond hearing.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

//

//

Dated this 27th day of July, 2026.

Camille D. Bibles
United States Magistrate Judge